Date signed October 19, 2012



_____
ROBERT A. GORDON
U. S. BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at Baltimore

| | | |
|---|---|---|
| In re: | * | |
| Chukwuemeka Samuel Egwu | * | Case No. 10-30652-RAG |
| | | Chapter 13 |
| | * | |
| Debtor | | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION DENYING THE LAW OFFICES
OF FRANK B. CAHN'S APPLICATION FOR
ATTORNEY'S FEES AND OVERRULING THE LAW OFFICES OF
FRANK B. CAHN'S OBJECTION TO PLAN**

I.  **Preliminary Statement**

Before the Court are the Law Offices of Frank B. Cahn's (Mr. Cahn or Counsel) Application for Attorney Fees (Fee Application) filed on January 3, 2012 (Dkt. No. 127) and Mr. Cahn's Objection to Confirmation (Dkt. No. 128) (Objection) filed the same day. The Fee Application seeks, *inter alia*, an award of attorney's fees as an administrative expense and the Objection seeks the denial of confirmation of the Debtor's Fifth Amended Chapter 13 Plan (Fifth Plan) filed December 14, 2011 (Dkt. No. 125) because the Fifth Plan does not propose to pay any of the fees that Mr. Cahn seeks to recover.[1] The surface question raised by the Fee Application

---
[1] The Debtor filed a brief Objection to the Fee Application (Objection to Fee) on January 17, 2012 (Dkt. No. 129).

1

(and contested by the Objection to Fee) is whether Mr. Cahn's fees should be allowed as an administrative expense per 11 U.S.C. § 503(a).[2] However, the Court frames the relevant inquiries differently. The real questions are (1) whether – save for certain inapplicable exceptions – professionals may enter into fee-sharing arrangements consistent with the Code, (2) whether Mr. Cahn failed to properly disclose his fee-sharing arrangement with Ms. Zell Gilden, Esquire and (3) whether sanctions are appropriate under the circumstances. For the reasons explained below, the Court finds that (a) Mr. Cahn and Ms. Gilden's arrangement is barred by the plain language of the Code, (b) Mr. Cahn did not disclose his fee-sharing arrangement as required by Rule 2016(b) and (c) the appropriate sanction for a stark violation of the Code, compounded by the non-disclosure of the same, is to disallow Mr. Cahn's fees and order the disgorgement of all fees paid to him.

## II.     Facts and Procedural Background

Mr. Chukwuemeka Samuel Egwu (Debtor or Mr. Egwu) commenced this case on September 8, 2010 by the filing of his Voluntary Petition for Relief under Chapter 13 (Petition). From the inception, Mr. Cahn was the Debtor's attorney and he remained in that role until the entry of an Order Striking Appearance of Counsel for Debtor (Order Striking Appearance) (Dkt. No. 89) on June 30, 2011.[3]  Mr. Cahn's Rule 2016(b) Statement (Disclosure of Compensation) (Dkt. No. 3), filed on September 8, 2010, indicates that Mr. Egwu agreed to pay $3,500 for Mr. Cahn's representation in this case with $1,500 paid at that time and $2,000 due.[4] In response to

---

[2] Hereafter, all statutory references will be to the Bankruptcy Code (Code), found at Title 11 of the U.S. Code, and all rule references will be to the Federal Rules of Bankruptcy Procedure, unless otherwise indicated.

[3] Michael O. Ramsey, Esquire filed a Notice of Appearance on behalf of Mr. Egwu on July 1, 2011 (Dkt. No. 91), thereby assuming Mr. Egwu's representation. The Debtor agreed to pay Mr. Ramsey $2,500 for services rendered, and to be rendered, with $1,000 paid up-front.

[4] A retainer agreement (Retainer Agreement) was attached as an Exhibit to the Disclosure of Compensation, of which more will be written later.

2

Question 4 of the Disclosure of Compensation, Mr. Cahn checked the box indicating, "I have not agreed to share the above-disclosed compensation with any other person unless they are members and associates of my law firm." The Fee Application (filed after Mr. Cahn had been discharged as counsel and a December 7, 2012 confirmation hearing during which the Court advised him of the necessity of filing an application under the circumstances) claimed that his total fees, calculated by hourly rate times hours, could be valued at somewhere between $6510 and $7210.[5] However, the Fee Application did not seek to increase Mr. Cahn's fee request but only sought the approval of his total 'flat rate' fee ($3,500) and that the balance due ($2,000) be paid through the Debtor's plan.[6]

The docket entries, many of which reflect activity undertaken on the Debtor's behalf by Mr. Cahn, grew to seventy-one before the Debtor's case was actually heard by the Court at a confirmation hearing that occurred on May 4, 2011.[7] However, Mr. Cahn did not appear at that hearing choosing instead to send Ms. Gilden. Her contribution was less than helpful. If she had the kind of intimate knowledge of the Debtor's case and financial affairs that the Fee Application suggests, she did not exhibit it at that time. Instead she came across as someone sent simply to stall. She could not answer the Court's questions concerning the Debtor's business lease as well as questions regarding the contemplated terms of the Debtor's anticipated plan. Furthermore, there was a clear lack of effective communication between her and Mr. Egwu with respect to the

---

[5] The Fee Application indicates in paragraph 3 that Mr. Cahn performed, and then billed, the Debtor for several services – attending the Section 341 meeting and two confirmation hearings – that he did not actually perform but which instead were performed by Ms. Gilden.

[6] Mr. Cahn's fee ostensibly falls under Paragraph 4.A. of Appendix F of the Local Bankruptcy Rules of this District.

[7] A confirmation hearing had been scheduled for February 2, 2011 but while it appears some discussions were had with the Trustee that day, the case was not called to be heard by the Court (Dkt. No. 61). Mr. Cahn did not appear at that hearing but instead did the same thing that he did for Mr. Egwu's Section 341 meeting of creditors and sent Ms. Gilden.

3

crucial question of the requisite amount of his monthly plan payment. All in all, her contribution had little, if any, value and confirmation was denied with leave to amend (Dkt. No. 73).[8]

Ms. Gilden also appeared at the next scheduled June 15, 2011 confirmation hearing. Her role was essentially limited to stating that the Debtor had fired Mr. Cahn's office and that he was seeking new counsel. Among other statements, the Debtor registered his dissatisfaction with the fact that despite his retention of Mr. Cahn roughly a year earlier and the occurrence of the Section 341 meeting and several confirmation hearings, Mr. Cahn had not once appeared on his behalf. The confirmation hearing was continued to August 31, 2011 and the Order Striking Appearance was entered soon thereafter.

The Fee Application indicates that Mr. Cahn paid fifty dollars ($50.00) in fees to Ms. Gilden for her attendance at the meeting of creditors and a total of two hundred and twenty-five dollars ($225.00) for her attendance at the confirmation hearings. This was confirmed by Mr. Cahn's Amended Disclosure of Compensation for Attorney for Debtor (Dkt. No. 135) (Amended Disclosure) which noted the payments he had made to Ms. Gilden and added that there was no written agreement underlying the fee-sharing arrangement.[9] That document was filed on February 15, 2012, approximately a year and a half after the commencement of the case and well after Ms. Gilden's active involvement had occurred; February 15th was the same day that the Court held a hearing on the issues addressed by this Opinion, the legitimacy of Mr. Cahn's fee

---

[8] That ruling is not uncommon. However, a sense of forward movement was distinctly lacking and the responsibility for that must fall on Mr. Cahn's shoulders for choosing to send a thoroughly unprepared Ms. Gilden.

[9] At the February 15, 2012 hearing, Mr. Cahn testified that Ms. Gilden was an independent contractor. The Court concludes that characterization is an afterthought intended to elude the plain meaning of the relevant Code sections and rules. The Fee Application bills Mr. Egwu for the services Ms. Gilden performed and that reflects his direct obligation to be financially responsible for them. The Court does not believe that the relationship was anything but a fee-sharing one wherein the dollars paid by Mr. Egwu to Mr. Cahn can be effectively, if not forensically, traced to Ms. Gilden's purse.

4

having been drawn into question by his Objection to the Fifth Plan, the Fee Application and the Objection to Fee.

On that day, those papers were all on the docket for decision. Mr. Cahn testified with respect to his representation of Mr. Egwu. He stated that prior to the confirmation hearings he had invested considerable time and effort toward either eliminating or reducing secured claims against the Debtor's real estate. The record reflects the filing of motions intended to achieve those ends. Counsel also testified that he personally discussed the Debtor's financial affairs and proposed plans with him and the Trustee and had explained to Mr. Egwu the grounds underlying the Trustee's objections. As for Ms. Gilden's role, Counsel stated that she was sent to the confirmation hearings because he believed there was little to be done beyond asking for continuance or an order denying confirmation with leave to amend.[10]

Counsel said he did not believe it was necessary to disclose the possibility of a fee-sharing arrangement in his Disclosure of Compensation.[11] Even after Mr. Cahn hired Ms. Gilden to attend hearings on the Debtor's behalf, Counsel testified that he did not believe that he had a duty to amend the Disclosure of Compensation.[12] It was not until after the February 15th hearing, that Counsel amended the Disclosure of Compensation in a belated attempt to comply with the

---

[10] In contrast to that testimony, the Fee Application represents that, like Mr. Cahn, Ms. Gilden invested considerable time toward familiarizing herself with the Debtor's financial affairs. If that was the case – and based upon her showing, the Court does not believe it to be so – then there was a tremendous duplication of effort.

[11] He also testified that he has been a party to similar arrangements in other cases in the past.

[12] Rule 2016(b) provides in relevant part, "A supplemental statement shall be filed and transmitted to the United States trustee within 14 days after any payment or agreement not previously disclosed."

5

up until then flouted, yet mandatory, requirements of Rule 2016(b).[13] Following argument, this matter was taken under advisement.

In the Objection to Fee, the Debtor raised three grounds in support of the denial of Mr. Cahn's fee: 1) Mr. Cahn failed to attend the Debtor's confirmation hearings, 2) Mr. Cahn failed to assist the Debtor in resolving the Trustee's objections to the Debtor's plan, and 3) these failures of representation unreasonably delayed plan confirmation. The Objection did not raise Mr. Cahn's fee-sharing arrangement with Ms. Gilden, the validity of the same, or its non-disclosure; those issues were raised *sua sponte* by the Court. Because the Court concludes that the statutory provisions regarding fee sharing, and an attorney's duty to honestly disclose what he is instructed to disclose with respect thereto, greatly outweigh the substantive pros and cons regarding the quality of services provided by Mr. Cahn, the issues raised *sua sponte* will be addressed first.

## III.  Analysis

By extending approved professionals an administrative fee priority, payable in full in advance of other claimants, the Bankruptcy Code grants them a significant advantage. *See* Sections 507(a)(2), 503(b)(2) and 330(a). In part, this advantage is the oil that greases the gears of the bankruptcy system; things would grind to a halt without it because if the prospect of priority payment was lacking, no sane professional would attempt to build a career in this area of the law where by definition, available dollars are at the highest premium. Yet, because of the great potential for, and actual historical precedent of, abuse the court has a great oversight responsibility to ensure that professional fees are reasonable and are paid in exchange for services that benefit the estate. *In re Park-Helena Corp.*, 63 F.3d 877, 880 (9th Cir. 1995); *In re*

---

[13] The hearing on February 15, 2012 was held at 10:00 a.m. The Court docket indicates that the Amended Disclosure was filed at 12:39 p.m. on the same day. Needless to say, Ms. Gilden never filed any disclosure of compensation.

*Gay*, 390 B.R. 562, 569 (Bankr. D. Md. 2008). The Code's myriad of provisions must be observed, and complete and truthful disclosure of all fee arrangements must be made, both as a foundation for the allowance of administrative fees and to permit the court to discharge its oversight function.

In this instance, the first such provision is Section 504(a). In pertinent part that subsection provides:

> Except as provided in subsection (b) of this section, a person receiving compensation or reimbursement under section 503(b) or 503(b)(4) of this title may not share or agree to share—
> any such compensation or reimbursement with another person; or any compensation or reimbursement received by another person under such sections.[14]

Could there be a provision of the Code less susceptible to misunderstanding? Not likely. And the bar against fee-splitting is buttressed by strong policy reasons. These include (1) the potential that a claimant may inflate her fee to make up for the portion lost to sharing, (2) the potential that the approved professional may be subject to outside influences of which the court has neither knowledge or control and (3) the potential for the *de facto* transfer of judicial power over expenditures and allowances. *Matter of Futuronics Corp.,* 5 B.R. 489, 499, fn. 3 (S.D. N.Y 1980), *aff'd*, 655 F.2d 463 (2nd Cir. 1981). Because a fee-splitting arrangement can be so abhorrent to the bankruptcy system, denial of all fees of the offending professional is

---

[14] Subsections (b) and (c) state inapplicable exceptions to the portion of Section 504 quoted. Rule 2016(b) states in pertinent part:

> "Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 14 days after the order for relief, or at another time as the court may direct, the statement required by §329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity. The statement shall include the particulars of any such sharing agreement or agreement to share by the attorney, but details of any agreement for the sharing of the compensation with a member or a regular associate of the attorney's law firm shall not be required. A supplemental statement shall be filed or transmitted to the United States trustee within 14 days after any payment or agreement not previously disclosed."

Fed. R. Bankr. P. 2016.

appropriate. *Futuronics*, 5 B.R. at 499-500. This is particularly so in the case of non-disclosure. *Id.* Section 504(a) provides an absolute bar to Mr. Cahn's fee-sharing arrangement with Ms. Gilden. There is no compelling reason why Congress should not be taken at its word in this instance and Section 504's plain language applied to the offending conduct. Hence, Mr. Cahn's Fee Application will be denied *in toto*.

Even if the only issue was non-disclosure, the Court would likely arrive at the same result.[15] Section 329(a) and Rule 2016(b) impose a non-waivable, independent duty on attorneys to disclose their fee arrangements. A failure to disclose a fee arrangement – *any* fee arrangement – without more is sanctionable. *Park-Helena Corp.*, 63 F.3d at 881; *Gay*, 390 B.R. at 570. Counsel testified that he was unaware of his duty to disclose his arrangement with Ms. Gilden. Yet, Mr. Cahn's own Retainer Agreement states, "Over the years, our office has represented thousands of individuals in the U.S. Bankruptcy Court." If this is true, it is difficult to believe he is completely unfamiliar with Rule 2016(b)'s simple requirements; this is a rule that must be applied at the beginning of every single case. Furthermore, the Disclosure of Compensation expressly represented that Counsel was not a party to a fee-sharing arrangement. However, Ms. Gilden appeared at the Debtor's Section 341 meeting a little over a month after the case was filed. If there was no agreement when the case was filed, one surely existed by then and a supplemental disclosure should have been filed within fourteen days of the triggering event.

Counsel did not disclose the nature of his fee-sharing agreement until he filed his Fee Application well over a year after the commencement of the case. Even then he did not file the Amended Disclosure until after the Court questioned him regarding the discrepancy between his initial Disclosure of Compensation and the Fee Application. And this is true notwithstanding the

---

[15] It is arguable that Section 504's bar only applies to administrative fee awards, thus immunizing the portion of a fee paid pre-petition. Even if that is true, however, nondisclosure of a fee arrangement is a separate vice and the Court has no doubt of its power to order disallowance of all fees and disgorgement in that instance.

fact that the Retainer Agreement expressly acknowledges the likelihood that an attorney other than Mr. Cahn might be hired to "work on" the Debtor's case.[16]

In his defense, Counsel touts the services he has rendered on behalf of Debtor. While there were valuable services rendered, that value is clouded by the mismanagement of the Debtor's Section 341 meeting and in court representation of which the fee-sharing arrangement was part and parcel.[17] The Court's persistent uncertainty until February 2012 as to whether the case was making progress or spinning its wheels resulted in large part from Mr. Cahn's decision to allow Ms. Gilden to serve as a surrogate and her apparent lack of engagement with Mr. Egwu's affairs. By the time Mr. Ramsey entered his appearance, it was unclear as to whether the case was being effectively prosecuted or was destined for failure regardless of Mr. Egwu's attorney.[18] If good results are sufficient to overcome the *prima facie* problems arising from the fee-sharing arrangement and its non-disclosure, few are apparent in this case. In any event, the Court concludes that even stellar results would not overcome the impediments raised by the fee-sharing arrangement and the non-disclosure of the same.

---

[16] Just how another attorney from a separate firm can be legitimately imposed upon a client without his express consent presents a real head scratcher to this Judge. One obvious result of Ms. Gilden's imposition was Mr. Egwu's frustration, voiced in open court. From the Court's vantage point, it appeared that Mr. Egwu was surprised to have Ms. Gilden stand as his attorney and was very displeased that Mr. Cahn, whose services he had paid for, was not with him at either the Section 341 meeting or the confirmation hearings.

[17] Mr. Egwu took the position at the February 15th evidentiary hearing that the straw that broke the camel's back was Mr. Cahn's handling of the D.C. Government's (the District) tax claim and his effort to negate the District's claim of partial priority status. However, it appears that Mr. Cahn did raise the impropriety of extending priority status to the District in the very first objection he filed. Why the District did not fix the problem until after Mr. Ramsey filed an objection is unclear but it may have been because Mr. Cahn had a difficult time properly serving his objection on the District (Dkt. No. 98).

[18] As the Court understands it, all outstanding issues have now been resolved and the entry of this Opinion and the order enforcing it are the sole roadblocks to confirmation.

## IV. <u>Conclusion</u>

The potential for abuse is so great in this context that the Court concludes the relevant provisions must be applied strictly and enforced with vigor. Therefore, the Court finds that Counsel is in violation to Section 504(a) and Rule 2016(b) and, as there are no significant mitigating factors apparent on the record, the Fee Application must be denied, the Objection overruled and all fees paid disgorged.[19] An order consistent with this Opinion shall be entered.

cc: Debtor
    Debtor's Attorney – Michael O. Ramsey, Esquire
    Frank B. Cahn, Esquire
    Trustee – Ellen W. Cosby
    All other interested parties

**End of Opinion**

---

[19] During his adventures along the Mississippi River, Huck Finn frequently struggles with right and wrong. Early on, after deciding not to turn in his friend and traveling companion, the escaped slave Jim, he says, "Well, then, says I, what's the use you learning to do right when it's troublesome to do right and ain't no trouble to do wrong, and the wages is just the same? I was stuck. I couldn't answer that. So I reckoned I wouldn't bother no more about it, but after this always do whichever come handiest at the time." Mark Twain, *Adventures of Huckleberry Finn* 84 (Borders Classic 2006). Huck does eventually resolve his inner conflict in favor of consistently "doing right". Thankfully, lawyers who practice bankruptcy are relieved of a like struggle. The Code and the Rules lay out the correct ethical pathway and practitioners should have no reason to permit themselves to "do whichever come handiest at the time."